

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00128-CV

---

El Paso County Juvenile Board and El Paso County, Appellant

v.

Violeta Mena, Appellee

---

On Appeal from the County Court at Law No 7
El Paso County, Texas
Trial Court No. 2022-DCV3817

---

## MEMORANDUM OPINION

This case concerns whether an employee "reported conduct that constituted a violation of law" by "the employing governmental entity" or by "another public employee" under the Texas

Whistleblower Act.[1] Appellee Violeta Mena contends she was terminated from her employment with Appellants El Paso County and the El Paso County Juvenile Board (collectively, the County) for making an alleged good faith report. She sued the County pursuant to the Act, under which a limited waiver of sovereign immunity applies. After the trial court denied the County's plea to the jurisdiction, it filed this interlocutory appeal. Because we hold that Mena did not raise a genuine issue of material fact as to whether she made a qualifying report of conduct by her employer or another public employee that would constitute a violation of law under the Act, we reverse the trial court's judgment and dismiss the case for want of jurisdiction.

## I. BACKGROUND

On February 4, 2022, Mena began her employment with the El Paso County Juvenile Probation Department (JPD) as a field compliance officer (FCO). The first six months of her employment included a mandatory probationary-evaluation period. Once that period ended, her supervisor would then recommend whether she would advance to regular status. Even so, the department chief remained the final decisionmaker. Among other things, Mena's duties required her to properly document her field work, which included home visits made to juveniles who were subject to home detention orders. The basis of Mena's report involved a home visit that led to an incident with the El Paso Police Department (EPPD) during her third month of her probationary employment.

### A. The incident involving EPPD

On April 27, 2022, Mena drove her personal vehicle to perform a home visit of a juvenile probationer. After she completed the home visit, she left the area to go to her next visit, and EPPD

---

[1] Tex. Gov't Code Ann. § 554.002(a).

officers pulled her over. Four or five police units surrounded her car, and several officers approached her looking into her windows. The officer at the driver's window informed Mena that she had been stopped for making a wide right-hand turn and asked for identification. Mena, wearing her work unform, responded, "Yes, I am actually working. I have my work ID. I work for [the] juvenile probation department." Officers asked her to step out and place her hands on the vehicle. After a pat down search, they questioned her regarding the home visit she had just completed.

Mena testified she felt confused and frazzled. The officers asked her whether "Jacob" was at the house, and she responded that she did not know who "Jacob" was. Officers then told her to call someone at JPD for information about "Jacob." Mena was unsure if she would reach anyone because it was after 5:00 p.m. but called another FCO. He advised her to tell the officers to directly call the probation office and hung up. After she got off the phone, Mena stated the officers looked in her car and told her to open her files and laptop. Mena testified she felt pressured, but, because there was no internet connection, she could only provide information from the last screen she had previously opened on her laptop.[2] When the officers let her go, they gave her a warning citation but told her she did not have to worry about it and to just tear it up.

Mena immediately called her supervisor Jennifer Contreras and left her a message, detailing what happened and requesting she call her back; she also sent her detailed text messages. She eventually spoke with Contreras and complained that EPPD officers violated her civil rights and did not show her professional courtesy. She stated she believed it was a "violation of law that [she] was forced to provide information about a family and a minor." That night, Mena sent an

---

[2] Mena stated she remembered the last screen showed the juvenile's address, date of birth, sibling group, parents, and his picture. The officers asked Mena to click on "Jacob" under sibling group. Without internet access, the screen did not advance.

email with the subject line "EPPD Incident" and recounted details of the incident to Contreras, her current probation services director Janel Mary Morgan, and her former special services director Camar Jackson. Mena reiterated that EPPD officers did not treat her with any professional courtesy. At the end of the email, Mena stated:

> I want to apologize if I disclosed any confidential information, it was never my intention but honestly I did not know what to do the whole situation was pretty surreal. For future reference, maybe this should be something to address in a training module. How should a situation such as this be handled? What information should an employee provide regarding the case?

Mena next brought up her concerns at a meeting, during which Contreras told her and other FCOs present that they were expected to comply with anything law enforcement asked if they were pulled over. After the meeting, Mena met one-on-one with Chief Probation Officer Rosie Medina where she reported the disclosure of confidential information. Mena told Medina that Contreras instructed her and others to comply with all future requests. Mena believed that, because of that instruction, she was told to "continue to violate [] law."

During Mena's final month of her probationary period, on August 17, she hand delivered a letter to both the Texas Rangers and the El Paso County Attorney. The letter referenced "Re: Violations of law" as its subject and Mena described she was reporting violations of law taking place at her workplace. In support, she cited to Title 3 of the Juvenile Justice Code of the Texas Family Code. She wrote: "In carrying out my work, I understand that under the law, I am required to keep confidential information about the juveniles that are under my responsibility." Specifically, she noted that § 58.106 of the Texas Family Code addressed confidentiality requirements. She understood the law prohibited her and her colleagues from providing confidential juvenile information in response to informal requests from outside law enforcement agencies, including the EPPD. The letter reiterated details of the traffic stop and her interaction with EPPD officers.

4

The letter also went on to explain that Mena met with Contreras the day after the incident and that Mena told Contreras she was planning to file a grievance against EPPD; Contreras responded, "we are not going to impose our policies on EPPD."[3] In her letter, Mena further indicated she received a summary from a team meeting of FCOs and the community improvement supervisor stating that they were to "comply with all requests" if stopped and questioned by law enforcement about juvenile home visits. Mena further noted that, in a meeting with Medina, Medina affirmed that "when requested, [Mena] should tell law enforcement anything they want." Mena explained in her letter that she believed "what has happened was a violation of law by both EPPD and JPD." As a JPD employee, Mena reported that she was concerned that JPD's directives to its staff appeared to be in direct violation of state law.

## B. Performance evaluations

Mena received six probationary evaluations from JPD. The first two generally indicated she had been performing adequately and could continue training and employment. On May 5, 2022, she received her third evaluation. It presented a combination of positive and negative results. She met expectations by interacting in a respectful manner and in exercising self-control under stressful circumstances. Specifically, the evaluation noted her interaction with EPPD. It described that Mena had "conducted herself with tact and professionalism." But, as for negative feedback, it also noted she was not meeting expectations in punctuality, attendance, and following departmental policies regarding absences. It also indicated she was not meeting expectations in staying organized and appropriately prioritizing her responsibilities.

On June 9, 2022, Mena received her fourth evaluation that indicated she met expectations in all areas. On July 12, 2022, Mena's fifth evaluation revealed she did not meet expectations in

---

[3] Mena did not file a complaint or grievance against EPPD.

responding to criticism. It stated that Mena was addressed on four major incidents involving her deficiency in organizational and time management skills. It further stated that Mena missed a home detention visit, failed to conduct home visits on one juvenile, failed to submit her tele-logs on a weekly basis, and failed to receive prior permission before accruing compensatory time. It also stated she had failed to inform anyone that she was not receiving an applicable spreadsheet and conducting supervision without a point of reference. Finally, the evaluation noted Mena struggled in the areas of organizational skills, timeliness, and appropriately prioritizing responsibilities. Her final evaluation indicated there was insufficient progress in her obtaining competency in the duties of being an FCO. At the end of the evaluation, her supervisor checked the box stating: "I do NOT recommend this employee be removed from probationary status."[4]

On September 29, 2022, Mena was terminated from her position. JPD issued an employee disciplinary report where boxes on the form were checked for dishonesty, violation of policy, and poor job performance. In describing incidents, the report indicated Mena failed to submit accurate tele-logs in a timely manner, she accrued compensatory time without obtaining proper approval, and she deviated from her approved schedule. Mena was dismissed effective that day.

### C. Mena files suit

Mena filed a lawsuit against the County alleging she was unlawfully discriminated and retaliated against under the Texas Whistleblower Act. Mena alleged that she was wrongfully discharged after she made a good faith report to an appropriate law enforcement authority, reporting that her employer was violating state law. Mena complained that the cited reasons for

---

[4] The final evaluation is not signed or dated. Our record shows Contreras emailed her supervisor and human resources to inform them she had not completed the evaluation because she was waiting on Mena to respond to her noted discrepancies that might result in a recommendation to separate.

her termination were pretextual, and she was retaliated against because she had exercised her right to complain to law enforcement authorities about violations of law.

The County filed a plea to the jurisdiction asserting that no violation of law had occurred when Mena disclosed confidential juvenile information to EPPD or when JPD later advised Mena and other employees to cooperate with law enforcement. The County contended that Mena had failed to allege an actual violation of law, failed to meet the good faith standard, and failed to establish that her report to law enforcement was in fact the reason for her termination. Multiple deposition transcripts were attached to the County's plea. Mena filed a response also attaching depositions and other records as evidence in support. She argued a fact issue existed as to whether she made good faith reports of a violation of law. The trial court denied the County's plea to the jurisdiction.

This appeal followed.

## II. STANDARD OF REVIEW

Governmental units are typically immune from suit unless the state waives immunity. *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 181–82 (Tex. 2022). "The Texas Whistleblower Act provides a limited waiver of that immunity." *Id.* Here, the County challenges the existence of jurisdictional facts through a plea to the jurisdiction. We review such challenges de novo, considering "the facts alleged by the plaintiff and to the extent relevant, evidence submitted by the parties." *Id*. Where the facts underlying the merits and jurisdiction are intertwined, the plaintiff must produce evidence "creat[ing] a fact question regarding the jurisdictional issue." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the

nonmovant's favor. *Id*. In the case at hand, we must evaluate whether Mena raised a genuine issue of material fact as to each element of her Whistleblower Act claim. *Pridgen*, 653 S.W.3d at 182.

## III. THE WHISTLEBLOWER ACT

As relevant, the Whistleblower Act provides: "[a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code Ann. § 554.002(a). In a Whistleblower Act suit, the employee bears the burden of proving this claim and is required to "allege jurisdictional facts giving rise to an actual violation of the Act to qualify for the statutory waiver of immunity." *Tex. Health & Human Services Comm'n v. Pope*, 674 S.W.3d 273, 280 (Tex. 2023). "Thus, in a Whistleblower Act suit by a public employee against her governmental-entity employer, the employee must show that she: (1) reported (2) a violation of law by the employer or another public employee (3) to an appropriate law enforcement authority, (4) the report was made in good faith, and (5) the adverse action would not have occurred when it did if the employee had not reported the illegal conduct." *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 182 (Tex. 2022) (citing Tex. Gov't Code Ann. § 554.002(a)).

## IV. QUALIFYING "REPORT" UNDER THE ACT

In a single issue, the County contends the trial court erred in denying its plea to the jurisdiction. Specifically, it argues that Mena, as a matter of law, did not report an actual "violation of law" and that she was the only employee who allegedly violated the law. It further argues that Mena was terminated because of poor job performance during her probationary period. The County argues the trial court's order should be reversed because it is immune from suit unless Mena can

prove jurisdictional facts that support a claim under the Whistleblower Act. We begin with determining whether Mena has made an actionable report of a violation of law.

The Act defines a "law" as "a state or federal statute"; "an ordinance of a local governmental entity"; or "a rule adopted under a statute or ordinance." Tex. Gov't Code Ann. § 554.001(1). Although the Act does not require that the employee identify the specific law she asserts was violated, there still must be some law prohibiting the complained-of-conduct, and the employee must identify the specific law at some point during the litigation. *Wilson v. Dallas Indep. Sch. Dist.*, 376 S.W.3d 319, 323, 327 (Tex. App.—Dallas 2012, no pet.). Further, an actionable report includes multiple requirements. First, "the Whistleblower Act protects only express reports to an appropriate law enforcement authority that unambiguously identify the employing governmental entity or another public employee as the violator." *Tex. Health & Hum. Servs. Comm'n v. Pope*, 674 S.W.3d 273, 281 (Tex. 2023); Tex. Govt. Code Ann. § 554.002(a). Second, an employee's report of a violation of law must be made in good faith. Tex. Gov't Code Ann. § 554.002. In other words, the employee "must have believed [she] was reporting conduct that constituted a violation of law and [her] belief must have been reasonable based on [her] training and experience." *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 626 (Tex. 2010).

Here, Mena alleged she made "reports of violations of law" concerning the release of confidential juvenile information in violation of § 58.106 of the Texas Family Code. The cited provision she referred to states in pertinent part as follows:

> (a) Except as otherwise provided by this section, information contained in the juvenile justice information system is confidential information for the use of the department and may not be disseminated by the department except:

> .    .    .

> (2) to a criminal justice agency as defined by Section 411.082, Government Code[.]

Tex. Fam. Code Ann. § 58.106(a)(2). Mena asserts that she believed in good faith that the release of confidential juvenile information to third parties like EPPD was a violation of law.

Assuming the release of confidential juvenile information to third parties like EPPD would be a violation of § 58.106, which we need not decide today, we must first consider Mena's factual allegations in determining whether she reported conduct by her employer or another public employee that would qualify as an actionable report under the Whistleblower Act. Stated another way, we must first consider whether Mena has alleged facts that she reported that either her employer or another public employee released confidential juvenile information in violation of § 58.106(a)(2). *See Pridgen*, 653 S.W.3d at 184 ("[T]o properly 'report' under the Act, a public employee must convey information that exposes or corroborates a violation of law or otherwise provide relevant, additional information that will help identify or investigate illegal conduct.").

Mena asserted she made two good faith "reports" of violations of law: (1) her report to Chief Medina that EPPD had forced her to violate the law in releasing confidential juvenile information, and (2) her report to the Texas Rangers that JPD's orders to FCOs to comply with EPPD in similar future situations even though it would result in the release of confidential juvenile information in violation of the law. Mena asserts that "JPD's directives to staff appear to be in direct violation of state law." In support, Mena provides a letter from her supervisor Contreras in which she is told that JPD was "not going to impose [their] policies on EPPD[.]" Contreras provided Mena with this response to her complaint asserting that a release of confidential information would result in a violation of law. Additionally, Mena further alleged she was told to "comply with all requests" if stopped by law enforcement. Finally, she alleged Medina told her to "tell law enforcement anything they want." Mena contends these actions by JPD constituted a

10

violation of law because the entity ordered its employees to release confidential juvenile information in violation of § 58.106 of the Family Code.

In first looking at her report involving the interaction with EPPD, the record shows that Mena herself acknowledges that she released confidential juvenile information when she turned over her laptop and allowed officers to view limited records on her screen. Nonetheless, as relevant to our jurisdictional inquiry, Mena neither alleges nor provides evidence raising a genuine issue of material fact that either JPD itself or another one of its employees actually released protected information to EPPD during that incident. Mena did not call her JPD supervisor before giving EPPD access to her laptop. Also, the JPD coworker who she did reach by phone merely advised her to tell the officers to call the probation office directly before he ended the call. As a result, with regard to this incident, there is no evidence that Mena reported a violation by JPD or another public employee asserting that either of them released confidential juvenile information during the EPPD traffic stop.[5] *See City of Denton v. Grim*, 694 S.W.3d 210, 214 (Tex. 2024) ("[T]he Whistleblower Act protects only express reports to an appropriate law enforcement authority that unambiguously identify the employing governmental entity or another public employee as the violator.").

Notably, Mena makes it clear in her briefing that she never pleaded that her own release of confidential juvenile information formed the basis of her actionable report under the

---

[5] To the extent Mena made complaints regarding EPPD's conduct, such reports cannot support a claim under the Whistleblower Act in this case. The Texas Supreme Court has clarified that "while the Whistleblower Act may be 'aimed at ferreting out government mismanagement to protect the public' because of concerns 'that employees who disclose mismanagement deserve legal protection,' the Act's text only 'provides a limited waiver' of the government's immunity and 'is not intended to protect *all* reports' of wrongdoing." *City of Denton v. Grim*, 694 S.W.3d 210, 214 (Tex. 2024) (quoting *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 182 (Tex. 2022). Here, Mena neither alleges that she was employed by the EPPD, or that its actions could be imputed to JPD, her employer. *See Id.* at 217 (holding alleged violations by city council member, who was not a public employee, could not be imputed to the city, and this, were not violations of law by city as the employing governmental entity). As the Texas Supreme Court noted, "[t]he text does not protect *all* reports of violations of law associated somehow with government business." *Id.* at 214. "The statute could certainly have been written to include all reports of public corruption or of illegality associated with the government. It was not." *Id.* Accordingly, any adverse personnel action stemming from Mena's report of EPPD's conduct cannot support a Whistleblower Act claim. *Id.*

Whistleblower Act. Instead, she contends she reported her concern about "JPD's order to comply in what she reasonably believed was EPPD's illegal conduct *in the future*." (Emphasis added).

The Texas Supreme Court has held that a prediction of a possible violation of law does not equate to a report of a violation of law. *See City of Elsa v. Gonzalez*, 325 S.W.3d 622, 627 (Tex. 2010) (citing *State v. Lueck*, 290 S.W.3d 876, 885 (Tex. 2009) (noting that "prediction of possible regulatory non-compliance" in the future does not equate to reporting a violation of law). In *Gonzalez*, the Court considered a report by a former city manager that the mayor "might violate laws in the future if he remained as mayor" and concluded such was not a good-faith report of an existing or past violation of law. *Id.* For this reason, the Court concluded the record established that Gonzalez did not in good faith report a violation of law. *Id.*

Mena's complaint about JPD's instruction to employees highlights that no confidential juvenile information had been released (due to the instruction), though she remained concerned about potential future violations. Nevertheless, a fear of a possible future violation does not qualify as a valid report of a violation of law. *See id.*; *see also Lamb v. Rockwell Automation, Inc.*, 249 F. Supp. 3d 904, 913 (E.D. Wis. 2017) ("A whistleblower claim requires an extant or likely, not theoretical or hypothetical, violation of the law.").

We conclude Mena has failed to raise a genuine issue of material fact showing she "reported conduct that constituted a violation of law" by her employer or another public employee under the Whistleblower Act. *See Gonzalez*, 325 S.W.3d at 626. Therefore, the Act does not waive the County's immunity from suit. We sustain the County's sole issue.[6]

---

[6] The County contends that Mena's subjective belief that a release of confidential juvenile information to EPPD would violate § 58.106 also fails as a reportable violation under the objective good faith element because the statutory definition of a "criminal justice agency" encompasses EPPD as law enforcement. *See* Tex. Gov't Code Ann. § 411.082(3). Therefore, the County contends that Mena should have known it was lawful for her to share records with law enforcement. We need not address these arguments because, even if a release of information to EPPD would violate the statute, there was no report of an actual release of information by her employer or another public employee. *See Grim*, 694 S.W.3d at 217; *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 627 (Tex. 2010).

## V. CONCLUSION

We reverse the trial court's judgment denying the County's plea to the jurisdiction and render judgment dismissing her suit for lack of jurisdiction.


GINA M. PALAFOX, Justice

November 17, 2025

Before Salas Mendoza, C.J., Palafox and Chapa, JJ.
Luz Elena D. Chapa, J. (Sitting by Assignment)

13